UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BARRY TRANTHAM,

      Plaintiff,                           CIVIL ACTION NO. 09-CV-14137

      vs.                                    DISTRICT JUDGE NANCY G. EDMUNDS

HARTFORD LIFE AND                 MAGISTRATE JUDGE MONA K. MAJZOUB
ACCIDENT INSURANCE
COMPANY,

      Defendant,
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION:** This Court recommends that Plaintiff's Motion for Judgment (docket no. 18) be **DENIED**, Defendant Hartford Life and Accident Insurance Company's Cross Motion for Judgment (docket no. 19) be **GRANTED**, and Plaintiff's Complaint be **DISMISSED**.

**II.    REPORT:**

Plaintiff, Barry Trantham, brings this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging the denial of long-term disability ("LTD") benefits under his former employer JPMorgan Chase Bank's Group LTD Plan. Defendant Hartford Life and Accident Insurance Company ("Hartford") is the plan administrator. Presently before the Court are the parties' cross-motions for judgment on the administrative record. (Docket nos. 18, 19). All pretrial matters have been referred to the undersigned for action. (Docket no. 21). The Court dispenses with oral argument pursuant to E.D. Mich. LR 7.1(f). The motions are now ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).

**A.    The Administrative Record**

1

Plaintiff was employed at JPMorgan Chase Bank for approximately twenty years, most recently as a Senior Relationship Manager in the Business Banking Group in Flint, Michigan. (AR 84, 90). As a Relationship Manager, Plaintiff was responsible for generating new business by actively calling on existing and prospective municipalities and school districts to offer them banking services. (AR 86). Plaintiff was required to make a minimum of ten calls per week to clients and prospective customers. (AR 54). Of those ten calls, six had to be pre-planned by Thursday of the preceding week. (AR 54). Calls could be scheduled from very early in the morning until late in the evening as needed. (AR 54). The position also required Plaintiff to attend periodic breakfast, lunch, and dinner meetings throughout the year. (AR 54).

Plaintiff contends that he began consulting with Dr. Larry Braver, his family physician, in June 2006 concerning ongoing fatigue that was interfering with his ability to perform his job. The administrative record contains copies of Dr. Braver's treatment notes from June 26, 2006 through May 21, 2008, which reveal that the Plaintiff regularly appeared before Dr. Braver with complaints of chronic fatigue, muscle aches, sore throat, and nausea. (AR 285-310). Dr. Braver's treatment notes reveal that the Plaintiff was assessed with a number of medical conditions, including among other things sinusitis/seasonal allergy, chronic abdominal pain, chronic mononucleosis, rule out restless leg syndrome, migraines since his college days, Epstein barr syndrome, and chronic fatigue. (AR 286-310).

On October 16, 2007 Dr. Braver referred the Plaintiff to the University of Michigan Medical Center for a chronic fatigue consultation. (AR 293, 296, 361). University of Michigan Associate Professor and rheumatologist Dr. Robert Ike evaluated the Plaintiff and determined that Plaintiff's clinical picture was "most consistent with chronic fatigue syndrome," and that the Plaintiff meets

the 1994 CDC criteria for this disorder. (AR 361). Dr. Ike's medical note states that the Plaintiff has had an ongoing problem with chronic fatigue for many years and that his condition has progressively worsened over the past four to five years. (AR 362). The treatment note states that Plaintiff has undergone two sleep studies which have failed to show evidence of sleep apnea, although a 2005 sleep study shows evidence of upper airway resistance syndrome. The treatment note indicates that Plaintiff reported considerable musculoskeletal and cognitive complaints, including muscle achiness which worsens with physical activity, forgetfulness, difficulty focusing on tasks to completion, and difficulty completing a conversation which has caused him to "mumble" on the telephone with business clients. (AR 362). On physical examination, Plaintiff was found to have evidence of arthritis in his fingers which was probably degenerative, and a normal range of motion in both hips. (AR 361, 365). Plaintiff was able to rise 9 times out of a chair in a 30-second interval. (AR 365). Wrists, elbows, and shoulders moved normally. X-ray results revealed mild degenerative changes at the bilateral hips with no evidence of erosive arthritis. (AR 361-62).

Plaintiff was seen by Dr. Ike again on November 19, 2007. (AR 359). Dr. Ike's treatment note from that date indicates that he saw the Plaintiff for followup "of what is almost certainly chronic fatigue syndrome." (AR 359). Dr. Ike encouraged the Plaintiff to attempt some physical activity several times per week, but noted that the Plaintiff experienced persistent fatigue after he tried to begin walking a mile and a half with his wife. (AR 359-60). No formal diagnostic measures were recorded.

On March 17, 2008 Plaintiff was seen again by Dr. Ike. The treatment note from this visit indicates that Plaintiff was diagnosed with pneumonia and was finishing up a course of antibiotics. The note states that Plaintiff reported that his condition had gotten steadily worse since November,

3

despite the fact that he was on leave from work and was no longer affected by work-related stress. Dr. Ike opined that "[n]othing has come up to suggest any diagnosis other than chronic fatigue syndrome." (AR 355).

The record shows that Plaintiff claims to have become totally disabled from his job on or about July 4, 2007 due to chronic fatigue syndrome. (AR 84-85, 87). He received short-term disability benefits from July 12, 2007 to February 13, 2008. (AR 131, 140). In February 2008 he completed the forms necessary to apply for LTD benefits.

As part of Plaintiff's application for LTD benefits, Mike Burke, Area Manager for JPMorgan Chase Bank, completed a physical demands analysis related to Plaintiff's job function. (AR 81). According to Burke, Plaintiff's job permitted him to work at his own pace in an office setting using a computer, telephone, and calculator. (AR 81). To perform his job Plaintiff was required to sit for three hours, stand for two hours (an hour at a time), and walk for three hours (an hour at a time), and he could alternate between sitting and standing as needed. (AR 81). Burke reported that Plaintiff's job required him to constantly balance, and frequently drive, reach at waist level, and use gross and fine motor handling and fingering skills. (AR 82). Skills such as stooping, kneeling, crouching, reaching above the shoulder or below the waist, handling with both hands, and feeling temperatures and textures were only occasionally needed. Airline travel was also only occasionally required. Crawling and climbing were never required. (AR 82). Plaintiff's position required him to work inside and outside for equal amounts of time.

On March 4, 2008 A. Sharron Edgar, clinical case manager for Hartford, sent Dr. Ike a letter outlining Edgar's understanding of Plaintiff's condition and requesting additional information in order to further evaluate Plaintiff's claim. (AR 71-72). Edgar is a registered nurse, certified case

4

manager, certified disability management specialist, and certified rehabilitation registered nurse. (AR 72). Nurse Edgar observed that Plaintiff's x-rays and laboratory results were essentially normal, and asked whether it was the opinion of Dr. Ike that Plaintiff is functionally capable of performing his own occupational activities for his employer, and if not, whether that assessment is based on Plaintiff's job stress. Nurse Edgar requested that Dr. Ike provide objective medical evidence to support a negative conclusion. Dr. Ike returned the letter with the word "no" circled after each of the two questions, along with a document showing the revised CDC criteria for chronic fatigue syndrome with check-marks made next to seven of the eight listed symptoms for the disease. (AR 71, 73). Dr. Ike provided no objective medical evidence to support his opinions.

On March 12, 2008 Hartford denied Plaintiff's benefit claim, finding that the information in Plaintiff's file did not show that he was unable to perform the essential duties of his occupation on a full time basis as of February 15, 2008. (AR 65-69). In its denial letter Hartford indicated that the medical information submitted by Dr. Ike shows that Plaintiff was diagnosed with chronic fatigue syndrome over five years ago, and that Plaintiff's self-reported symptoms of short-term memory loss, decreased concentration, sore throat, tender cervical or axillary nodes, muscle pain, multi-joint pain, unrefreshed sleep, post-exertional malaise lasting greater than 24 hours, and migraine headaches predated his diagnosis of chronic fatigue syndrome by years. (AR 67). Hartford observed that Plaintiff's laboratory results were normal, and that Plaintiff had normal range of motion in his hips, knees, and ankles, with only some restriction of full finger extension caused by bony hypertrophy in the second and fourth PIP joints. (AR 67). Hartford further observed that there were no objective measures documenting Plaintiff's memory loss or difficulty with concentration. (AR 68).

5

Plaintiff appealed the denial of his disability benefits claim. Attached to his appeal letter was a letter from Dr. Ike dated May 2, 2008, in which Dr. Ike reiterated his opinion that Plaintiff could not perform the essential duties of his job. (AR 381-82). In the letter Dr. Ike strongly disagreed with Hartford's conclusion that Plaintiff could sit for three hours a day, walk for three hours a day, stand for two hours a day, use a computer, telephone, and calculator, frequently reach, balance, handle, and finger with both hands. (AR 381). Dr. Ike further reiterated that Plaintiff had considerable fatigue, made worse with any activities, which could be exacerbated during the day without warning and render him completely unable to perform any of his essential duties.

In response to the appeal, Hartford referred the case for an independent medical review with Dr. Daniel P. McQuillen of the University Disability Consortium. Dr. McQuillen reviewed the Plaintiff's medical records and in a letter dated October 10, 2008 offered his opinion that the Plaintiff's medical records do not appear to meet diagnostic criteria for chronic fatigue syndrome. (AR 216-227). Dr. McQuillen found on review of the medical records that Plaintiff had a history of consistent reports of fatigue since at least 2003-2004, well before the Plaintiff's date of disability. (AR 224, 226). Dr. McQuillen further opined that the Plaintiff appears to have seasonal allergic rhinitis with recurrent episodes of sinusitis, but that these do not appear to have risen to a level that would preclude his ability to work. (AR 226). Dr. McQuillen further found that there were no objective physical reasons the Plaintiff would be unable to work a regular eight-hour day or forty-hour workweek. (AR 226-27).

In a letter dated October 22, 2008 Hartford informed Plaintiff's counsel that the documentation on file supports the prior adverse benefit determination. (AR 207-13). Hartford wrote that while the documentation does indicate that Plaintiff is diagnosed with medical conditions,

the record does not corroborate that the Plaintiff satisfies the policy definition of disability. (AR 213). Consequently, Hartford affirmed its decision to deny Plaintiff's claim for LTD benefits. On October 20, 2009 Plaintiff filed the instant Complaint in federal court seeking an order reversing Hartford's decision to deny his claim for LTD benefits.

**B.     Review of ERISA Denial of Benefits Claims**

Under ERISA, federal courts review a plan administrator's decision to deny benefits under a *de novo* standard of review unless a benefit plan gives the administrator discretionary authority to determine eligibility for benefits. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989); *Hunter v. Caliber Sys., Inc.* 220 F.3d 702, 709-10 (6th Cir. 2000). When a plan administrator has discretionary authority to determine benefit eligibility, the court applies the more deferential arbitrary and capricious standard of review. *Hunter,* 220 F.3d at 710.

Under a *de novo* standard of review, the court reviews the claim administrator's decision "without deference to the decision or any presumption of correctness." *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir. 1990). The *de novo* review standard requires the court to take a fresh look at the administrative record without considering new evidence or looking beyond the record that was before the plan administrator. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998).

In the present case the parties agree that Hartland has discretionary authority under the plan to determine Plaintiff's eligibility for benefits. However, they state that on March 1, 2007 the Michigan Office of Financial and Insurance Services ("OFIS") promulgated regulations which nullified discretionary clauses in insurance plans like Hartford's. The parties agree that Hartford's plan is impacted by the OFIS regulations. Consequently, they agree and stipulate that the *de novo*

standard of review is applicable to Hartford's decision to deny Plaintiff's claim for LTD benefits in this case. (Docket no. 16).

**C.     Analysis**

Hartford's plan defines the term "Disability" as follows:

1. during the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation;
2. for the 24 months following the Elimination Period, you are prevented from performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your Indexed Pre-disability Earnings;
3. after that, you are prevented from performing one or more of the Essential Duties of Any Occupation.

(AR 21). A qualifying disability must be the result of accidental bodily injury, sickness, mental illness, substance abuse, or pregnancy. (AR 21). Essential duties are those duties which (1) are substantial, not incidental; (2) are fundamental or inherent to the occupation; and (3) can not be reasonably omitted or changed. (AR 21). To be at work for the number of hours in the claimant's regularly scheduled workweek is an essential duty. (AR 21).

"Your Occupation" means the claimant's occupation as it is recognized in the general workplace, and does not mean the specific job the claimant is performing. (AR 24). "Any Occupation" means any occupation for which the claimant is qualified by education, training or experience. (AR 20). Finally, the "Elimination Period" is the period of time the claimant must be disabled before benefits become payable, and is defined as the first 182 consecutive days of any one period of disability. (AR 6).

As previously indicated, the essential duties of Plaintiff's job required Plaintiff to call on existing and prospective municipalities and school districts to offer them banking services. Plaintiff was required to make a minimum of ten calls each week, with six of those ten calls pre-planned by

8

Thursday of the preceding week. He was also responsible for attending several breakfast, lunch, and dinner meetings throughout the year. To perform these duties, Plaintiff must have the ability to sit for 3 hours a day, walk for 3 hours a day, stand for 2 hours a day, use a computer, telephone, and calculator, and frequently reach, balance, handle, and finger with both hands.

Plaintiff's physicians have found that Plaintiff is likely to have chronic fatigue syndrome, and that no other explanation has been found to support any other diagnosis. Even if the Court were to conclude that this is true and that Plaintiff has chronic fatigue syndrome, a diagnosis of chronic disease is not enough to support Plaintiff's claim for LTD benefits. The fact that the record shows that Plaintiff was diagnosed with chronic fatigue syndrome approximately four or five years before he claims to have become disabled is testament to the fact that a diagnosis of chronic fatigue syndrome is not automatically a disabling condition. (AR 381).

Hartford's plan requires Plaintiff to show both that he has an illness, and that the illness caused him to become disabled. Plaintiff's medical records show that he has been diagnosed with multiple medical conditions. Hartford requested that Plaintiff and Dr. Ike provide objective evidence that Plaintiff is not functionally capable of performing his occupational activities. In response, Plaintiff has continually argued that there are no objective medical tests that can unquestionably confirm a diagnosis of chronic fatigue syndrome. Plaintiff's argument ignores the fact that there are formal diagnostic tests that can measure Plaintiff's reported limitations in cognitive and functional abilities which would have provided objective evidence of Plaintiff's disability.

Plaintiff asserts that it was Hartford's responsibility to obtain a functional capacity evaluation to substantiate or disprove his benefits claim. Yet under Hartford's plan the claimant is responsible

for providing adequate proof of loss, and must submit any written proof which fully describes the nature and extent of his claim. (AR 16-17). Hartford in turn has reserved the right to determine if a claimant's proof of loss is satisfactory. (AR 17). If it determines that it is necessary to properly evaluate the claim, Hartford is entitled, but is not obligated, to require the claimant to meet and interview with a Hartford representative, or be examined by a doctor, vocational expert, functional expert, or other medical or vocational professional of its choice at Hartford's expense. (AR 17).

The burden clearly rests with the claimant to present sufficient medical evidence to support his claim of disability. Here, although Dr. Ike found Plaintiff to have significant cognitive limitations such as short-term memory loss, word finding problems, and apraxia which could have negatively impacted his ability to perform his job, no formal diagnostic tests were conducted to quantify or verify these findings. (AR 381). Furthermore, x-rays, laboratory results, and other objective evidence in the medical record do not support Plaintiff's assertion or his physician's statements that Plaintiff is unable to perform the essential duties of his occupation. Without supporting objective evidence of disability, a physician's statement that a patient feels he is disabled is not enough. *See Michele v. NCR Corp.*, No. 94-3518, 1995 WL 296331, at *3 (6th Cir. May 15, 1995) (the burden is on the claimant to present sufficient objective medical evidence to support his claim of total disability).

Viewed as a whole, the Court should find that Plaintiff has not demonstrated that he is disabled as that term is defined under Hartford's plan. Accordingly, Plaintiff's Motion for Judgment (docket no. 18) should be **DENIED**, Defendant Hartford Life and Accident Insurance Company's Cross Motion for Judgment (docket no. 19) should be **GRANTED**, and Plaintiff's Complaint should be **DISMISSED**.

**III.     NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n Of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc.  Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: November 3, 2010                                  s/ Mona K. Majzoub
                                                                              MONA K. MAJZOUB
                                                                              UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: November 3, 2010           s/ Lisa C. Bartlett
                                  Case Manager